**IT IS SO ORDERED.**

**SIGNED THIS: December 23, 2009**

_____
**WILLIAM V. ALTENBERGER
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| VAN DYKE, RUSTY | ) | No. 08-82866 |
| | ) | |
| Debtor. | ) | |

**O P I N I O N**

This matter is before the Court on confirmation of the Debtor's proposed Chapter 13 plan and the objection of ISU Credit Union ("ISU") to confirmation. Specifically, ISU objects to the Debtor's proposed bifurcation of its secured claim, asserting that the "hanging paragraph" of 11 U.S.C. § 1325(a)(9), which was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), protects its claim from bifurcation because its claim is secured by a purchase money security interest in a vehicle purchased for the Debtor's personal use within 910 days of the filing of the Debtor's petition for relief under Chapter 13.

The basic facts are undisputed. On June 25, 2008, the Debtor purchased a 2008 Mitsubishi Gallant for his own personal use. According to the retail installment contract, the cash price for the Gallant was $23,171.26. The Debtor put down $575 in cash and traded in a 2004 Mazda, for which

he was given a trade-in allowance of $9,000. The Debtor still owed $15,842 on the 2004 Mazda, so the retail installment contract included financing for $6,842 in "negative equity," which is the difference between the trade-in allowance and the amount the Debtor still owed the previous lender. The retail installment contract also included $3,000 for insurance and an extended warranty; $976.64 for tax, title, and license fees; and $175 for document and dealer fees. The total amount financed was $33,589.90.

On October 22, 2008, the Debtor filed his Chapter 13 bankruptcy petition. In his proposed plan, the Debtor provided for bifurcation of ISU's claim under § 506(a)(1) into a secured claim of $20,000 based on the value of the 2008 Mitsubishi Gallant plus interest at 7%, and an unsecured claim for the remainder. The Debtor specifically notes in his plan that "said vehicle does not qualify as a Section 1325 910 vehicle due to negative equity on a prior loan balance trade." ISU filed a proof of claim showing that the amount of its secured claim was $32,880.11 and an objection to confirmation of the Debtor's plan on the grounds that the plan did not provide for payment of ISU's secured claim in its entirety, despite the fact that the vehicle was purchased for the Debtor's personal use within 910 days of his bankruptcy filing. After a hearing before the Court, the parties submitted briefs outlining their respective positions.

The Debtor asserts that inclusion of the negative equity in the financing destroys the purchase money character of the loan and, therefore, the loan is subject to modification and bifurcation into a secured claim for the present value of the vehicle and a general unsecured claim for the balance. The Debtor first asserts that the addition of the hanging paragraph in § 1325(a)(9) adopted in 2005 created a narrow exception to the general rule which permitted Debtors to modify the rights of creditors and that the elements of the hanging paragraph should be construed narrowly because it is an exception to the general rules favoring equal treatment of creditors.[1] The Debtor acknowledges

---

[1] The Debtor cites no direct authority for this proposition; instead, he cites cases dealing with analogous provisions, such as cases that hold that exceptions to the automatic stay or to discharge should be construed narrowly. *See, e.g.*, *In re Miller*, 454 F.3d 899 (8th Cir. 2006) (noting that § 549(c) serves as an exception to the automatic stay imposed when a bankruptcy petition is filed); *In*

2

that the courts have split on this issue, but asserts that the decisions concluding that negative equity for a trade-in vehicle does not constitute purchase money security are more persuasive. Finally, the Debtor asserts that, under a plain reading of the statutory language, the hanging paragraph only applies when the creditor holds a purchase money security interest in the entire debt.

The Debtor asserts that this Court should follow *In re Hernandez*, 388 B.R. 883 (Bankr. C.D.Ill. 2008) (J. Fines), in which the court noted that, at the time of its decision, a majority of cases addressing the issue had taken the position that the negative equity resulting from a trade in of a vehicle is not part of the purchase money security interest and is therefore not subject to the 910-day rule under the hanging paragraph. The court in *Hernandez* considered the majority view to be the more well-reasoned view and more consistent with the plain meaning of the hanging paragraph because "[n]egative equity does not enable the debtor to acquire the new vehicle, it simply pays off the old loan." *Id*. at 884.

ISU asserts that it has a purchase money security interest in the entire amount loaned for the purchase of the vehicle and therefore the Debtor cannot bifurcate its claim. ISU relies on the line of cases holding that, under applicable state law, the negative equity is a part of the purchase money security interest. *See, e.g., In re Price*, 562 F.3d 618, 626 (4th Cir. 2009).

Before the amendments to the Bankruptcy Code enacted in 2005 as part of BAPCPA, the Code allowed secured claims (other than mortgages) only to the extent of the value of the collateral securing the claim. If the claim was under-secured, it was bifurcated under § 506(a)(1) into secured and unsecured components based on the value of the collateral. However, in 2005, Congress added the "hanging paragraph" at the end of § 1325(a), after subsection (9), which changed this practice.[2]

---

*re Kaspar*, 125 F.3d 1358 (10th Cir. 1997) (reciting proposition that exceptions to discharge are to be narrowly construed and that any doubt should be resolved in the debtor's favor to further the fresh start objectives of bankruptcy.)

[2]This paragraph, which follows § 1325(a)(9), is referred to as the "hanging paragraph" in the cases because it has no separate designation either by letter or number and "just 'hangs' without ordered designation and without surrounding context." *In re Graupner*, 537 F.3d 1295, 1296 n.1 (11th Cir. 2008).

The hanging paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [*sic*] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a)(9). Thus, under the plain language of the statute, to be entitled to this anti-bifurcation protection, a motor vehicle creditor must satisfy four general requirements: (1) the creditor must have a "purchase money security interest" in the collateral; (2) the debt must have been incurred within 910 days before the filing of the debtor's bankruptcy case; (3) the collateral for the debt must consist of a motor vehicle; and (4) the vehicle must have been acquired for the personal use of the debtor. *In re Graupner*, 537 F.3d 1295, 1298 (11th Cir. 2008).

After the enactment of the hanging paragraph, courts have divided over the interpretation of the term "purchase money security interest" used in the statute as it relates to negative equity financing. A majority of courts have concluded that a bankruptcy court should look to state law for the definition of the term "purchase money security interest." If, under the applicable state law, a purchase money security interest includes negative equity financing, then it is included for purposes of applying the hanging paragraph. However, the courts that look to state law have split regarding whether the refinancing of negative equity is included as a part of the purchase money security interest. The majority of these courts have found that purchase money security interest, as defined under state law, covers the entire loan, including the refinancing of negative equity. *See, e.g., In re Ford*, 574 F.3d 1279, 1286 (10th Cir. 2009); *In re Price*, 562 F.3d at 629; *Graupner*, 537 F.3d at 1303; *In re Howard*, 405 B.R. 901, 907 (Bankr.N.D.Ill. 2009). The minority view, also relying on state law, holds that refinanced negative equity is not encompassed within the statutory definition of purchase money security interest. *See, e.g., In re Penrod*, 392 B.R. 835, 852 (9 Cir.BAP 2008);

*In re Hall*, 400 B.R. 516, 520 (Bankr.S.D.W.Va. 2008); *In re Crawford*, 397 B.R. 461, 467 (Bankr.E.D.Wis. 2008). These courts, holding that negative equity is not part of the purchase money security interest, have also further split on the question of the effect of the negative equity component. One line holds that the presence of the negative equity transforms the entire security interest into a non-purchase money one (following the "transformation rule"), and the other line divides the loan into two parts and holds that the creditor retains purchase money status only in the portion allocable to the actual purchase price and the portion allocable to the negative equity has non-purchase money status (following the "dual status rule").[3]

Judge Perkins, Chief Bankruptcy Judge for the Central District of Illinois, recently addressed the issue presented in this case in an opinion entitled *In re Whipple*, 417 B.R. 86 (Bankr.C.D.Ill. 2009).[4] In *Whipple*, the debtors proposed to strip down the claim of Ford Motor Credit Company, which was secured by a 2007 Ford Escape, giving Ford a secured claim for the value of the Escape. However, the loan from Ford included negative equity from a prior vehicle, which was rolled into the loan for the Escape. Ford objected to confirmation, arguing it held a 910 claim that was exempt from strip down. The debtors claimed that the hanging paragraph did not protect Ford from bifurcation because the term "purchase money security interest" does not include the refinancing of negative equity of a trade-in vehicle.

After reviewing the majority and minority positions, Judge Perkins rejected the premise that the term "purchase money security interest" as used in the hanging paragraph should be defined by state law. Starting with the proposition that the Bankruptcy Code is a uniform federal scheme and that primary consideration must be given to the overarching principal that Congress intends the

---

[3] The dual status rule is applied to transactions other than consumer goods transactions and provides that a security interest may be a purchase-money security interest to some extent and a non-purchase money security interest to some extent. *See Penrod*, 392 B.R. at 854 (citing the Official Comment to Uniform Commercial Code § 9-103). The transformation rule provides that when a transaction contains both purchase money and non-purchase money obligations, the entire transaction is transformed into a non-purchase money transaction. *Id.* at 857.

[4] Judge Perkins sits in the Peoria Division of the Central District of Illinois, the division in which this case was filed.

bankruptcy laws to be applied as uniform federal rules of decision, Judge Perkins concluded that there is no general presumption for the incorporation of state law into the bankruptcy rule of decision. Instead, the preference for the federal courts, when fashioning federal common law, is to adopt a single uniform rule that best effectuates the federal policy. *Id*. at 91.

Judge Perkins also concluded that the property interest exception to the general rule of uniformity set forth in *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), is not triggered by the application of the hanging paragraph. In *Butner*, the Supreme Court held that where the Bankruptcy Act of 1898 did not define a mortgagee's interest in the rents and profits generated by the mortgaged property during the pendency of the bankruptcy case, the mortgagee's interest, as a property right, is determined by the law of the state in which the property is located. According to Judge Perkins, because the issue under the hanging paragraph is not whether the creditor has a property interest in the vehicle, but is only whether that property interest is modifiable in a Chapter 13 plan, the preference for state law under *Butner's* property interest exception is not applicable. *Id*. at 92.

Acknowledging that the question of whether a creditor holds a debt or has a security interest is properly determined under state law, Judge Perkins concluded that the effect of the hanging paragraph comes into play only *after* it has been determined, under state law, that the creditor is owed a debt that is secured by a security interest. The question then becomes whether the creditor is entitled to the special treatment provided by the hanging paragraph of no strip down in the Chapter 13 plan. The states have no cognizable interest in how "purchase money security interest" is defined for Chapter 13 plan purposes. *Id*. at 94.

Judge Perkins further concluded that the language and context of the hanging paragraph strongly support a uniform federal definition of "purchase money security interest." He noted that the hanging paragraph was enacted to establish a bright-line time frame of 910 days and a common

federal definition of "motor vehicle," and provided that creditors who finance a purchase within 910 days of filing received the preferred treatment of no stripdown over creditors whose loans were made prior to the 910th day. He further noted that Congress did not include any reference to incorporating state law as it has done in other Code provisions. From this, Judge Perkins found that Congress intended the hanging paragraph, generally, and the term "purchase money security interest," specifically, to be accorded a single, uniform meaning, not dependent upon or subject to the variations in the state law definitions of that term. *Id.* at 95.

Turning to the statutory language of the hanging paragraph, Judge Perkins concluded that the statement "securing *the debt* that is the subject of *the claim*" evidences an intent that courts treat the debt and the corresponding claim as indivisible for purposes of applying the hanging paragraph, and thus precludes separating the debt into two components, one for the purchase money funds and the other for the negative equity. *Id*. at 95-96 (emphasis in original). According to Judge Perkins, the use of the term "purchase money" as a modifier to "security interest" serves to exclude non-purchase money security interests from the scope of the hanging paragraph, and he notes:

> It cleaves the universe of loans into two subsets: those that are purchase money and those that are not. Where the lender advances funds used by the borrower to buy the car, the loan (and the security interest) is purchase money. Where the lender takes a lien on a car that the borrower already owns, its interest is non-purchase money. This simple distinction flows from the plain meaning of the statutory language. There is no need to resort to outside sources. If all or part of the lender's funds were paid to the seller for all or part of the purchase price of the car, the lender has a security interest that is "purchase money" as a matter of federal bankruptcy law.

*Id*. at 96. Therefore, since Congress elected to make the rule of decision a general one and does not "slice the purchase money concept any finer based upon other uses of a portion of the loan proceeds," Judge Perkins concludes that the fact that a portion of the loan proceeds was used to refinance negative equity in a trade-in does not affect the nature of the lender's security interest as a purchase money one.

Following the rationale outlined in *Whipple*, this Court concludes that ISU holds a purchase money security interest in the 2008 Mitsubishi Gallant for purposes of the hanging paragraph, and the fact that a portion of the loan proceeds was used to refinance negative equity in a trade-in does not affect the nature of that security interest. As the holder of a purchase money security interest, ISU's claim may not be bifurcated under § 506. Accordingly, ISU's objection to confirmation is allowed, and confirmation of the Debtor's proposed Chapter 13 plan is denied.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. See Order entered this day.

###